1 | P a g e

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SATARA N. MONROE,

        Plaintiff,

vs.

WELLS FARGO BANK, N.A.,

        Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, Plaintiff, SATARA N. MONROE ("Ms. Monroe") and sues Defendant, WELLS FARGO BANK, N.A. ("Wells Fargo"), and states:

## INTRODUCTION

Banking while black—that was Ms. Monroe's crime. Ms. Monroe's story is just another chapter in the tragic tale of the weaponization of 911. Ms. Monroe went to Wells Fargo to cash a paycheck that was drawn on a Wells Fargo account. When she was accused of fraud, her own boss physically went to his local Wells Fargo branch to speak with the branch manager in person to see what the issue was with the check he had signed earlier that day. Not enough for Wells Fargo who called the police to interrogate Ms. Monroe and treat her like a common criminal for absolutely no compelling reason. Sadly, this is just a continuation of the devasting pattern and practice of corporate America to call the police in to deal with any black customers they choose not to deal with or to be suspicious of simply on the basis of the color of their skin. It took two hours, an interrogation by the police, and her boss having to drive to the branch for Ms. Monroe to have her paycheck cashed, like any white customer would have had done without delay.

## JURISDICTION

1. This is an action against Wells Fargo to recover damages pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*, as amended, ("Section 1981").

2. Jurisdiction of this Court arises under 28 U.S.C. 1331 because the Complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

3. Venue in this District is proper under 28 U.S.C. 1391 because a substantial part of the events and omissions complained of took place in this District.

## PARTIES

4. At all times relevant to this Complaint, Ms. Monroe was and is a U.S. Citizen, over the age of 18, and a person with standing to bring a claim under Section 1981.

5. Ms. Monroe is 40 years old and is of African-American descent.

6. Wells Fargo is the primary subsidiary of Wells Fargo & Company and designates its main office in Sioux Falls, South Dakota. Wells Fargo is a result of a merger between Wells Fargo & Company, Norwest Corporation, and Wachovia.

7. As of December 2017, Wells Fargo has 5,800 retail branches and 13,000 automated tellers. Wells Fargo has over 70 million customers globally. Ms. Monroe was simply hoping to be treated the same way as the many other millions of Wells Fargo customers.

8. Along with Bank of America, Citigroup, and JPMorgan Chase, Wells Fargo is one of the "Big Four Banks" of the United States.

## BACKGROUND AND GENERAL ALLEGATIONS

9. Ms. Monroe provides in this Background and General Allegations section the general substance of certain factual allegations. Ms. Monroe does not intend that this section provide in exact detail, or necessarily in chronological order, any or all allegations. Rather, Ms.

Monroe intends that this section merely provide Wells Fargo fair notice of the general nature and substance of her allegations.

10. At all times material to this Complaint, Ms. Monroe was employed by IMBG Marketing, LLC—a marketing company based out of Coral Springs, Florida and owned by Jacquez Tullis ("Mr. Tullis").

11. Ms. Monroe would get paid weekly and Mr. Tullis would sign her check which was drawn upon a Wells Fargo account. If Ms. Monroe did not want to wait until the check cleared her own checking account, she would go to a local Wells Fargo branch and cash the check there.

12. Within the past four years, Ms. Monroe visited the Wells Fargo branch located at 2400 E. Atlantic Blvd., Pompano Beach, Florida, to cash her weekly pay check.

13. As Ms. Monroe was not a Well Fargo account holder, the teller—a young white female—asked Ms. Monroe for two forms of identification which Ms. Monroe provided.

14. Ms. Monroe also complied with the teller's request that she endorse the back of the check as well as to place her thumbprint on the check.

15. The teller then told Ms. Monroe that she could not cash the check and handed it back to her. When presses, the teller told Ms. Monroe that she had called the business owner to verify the check and was told it was fraudulent. Shocked, Ms. Monroe immediately called Mr. Tullis to see what the problem was. Mr. Tullis was shocked himself and said that he had received no such call and that there was not a problem with the check. Mr. Tullis spoke with the teller and identified himself, to no avail.

16. Ms. Monroe again attempted to have her check cashed. At that point, a manager came over and herded Ms. Monroe into a small office while they were "verifying the check."

17. Disturbed at what he heard, Mr. Tullis got up and drove to the local Wells Fargo

3 | P a g e

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

branch in Tamarac, Florida—just a few minutes away—where he regularly did business and spoke with the manager, Julie.

18. Julie immediately called over to the Pompano Beach branch to clear up any issues, also, to no avail, as Ms. Monroe reported that Wells Fargo still refused to cash her check and that she was quite upset about how way she was being treated.

19. Mr. Tullis couldn't understand why there was still an issue after he had personally spoken with the manager in the Tamarac branch, so he got back in his car and drove over to the Pompano Beach branch to see what was going on, while he remained on the phone with Ms. Monroe.

20. Despite being presented with a valid check, confirmation from the account owner by telephone and then in person, Wells Fargo decided to call the police instead.

21. Instead of calling the actual account holder to verify the check, the teller called the police and as is heard on the 911 recording, stated that she "had a fraud in progress" and that she "verified that it's fraud."

22. As Ms. Monroe was on the phone with Mr. Tullis who was on the way over to the branch, three deputy sheriffs with the Broward County Sheriff's office came into the room and began interrogating her, accusing her of fraud, and asking her who her accomplice was. Ms. Monroe was forced to undergo the terrifying interrogation for about an hour, desperately pleading and protesting her innocence.

23. The last thing Mr. Tullis heard Ms. Monroe say was "they're taking away my phone."

24. After Mr. Tullis arrived, identified himself, was made to wait, and finally spoke with the officers, the officers determine that there was no fraud and Ms. Monroe was free to go.

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

25. What should have been a simple transaction, ended up with Ms. Monroe being stuck in a small office for over two hours, interrogated like a common criminal and suffering deep embarrassment and humiliation.

26. Despite their repeated requests, neither Mr. Tullis nor Ms. Monroe were told what the purported issues with the check were.

27. Ms. Monroe was outraged, humiliated, and quite traumatized.

28. Neither the teller nor the manager ever apologized to Ms. Monroe. It wasn't until later in the day that Julie called Ms. Monroe to apologize.

29. Mr. Tullis' white employees never had any issues cashing their checks.

30. All conditions precedent to the filing of this action have occurred or have been waived.

## COUNT I
### Violation of §1981

31. Ms. Monroe repeats, realleges and incorporates paragraphs 1 through 30.

32. As described above, Wells Fargo's outrageous conduct constituted discrimination because of Ms. Monroe's race in violation of Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, *et seq.*

33. Through Wells Fargo's discriminatory conduct, it deprived Ms. Monroe of her right to make and enforce contracts on the same terms as enjoyed by white persons, in violation of 42 U.S.C. § 1981.

34. In addition, Wells Fargo is liable for its employees' actions under the doctrine of *respondeat superior.*

35. Ms. Monroe is an African-American woman. Wells Fargo denied Ms. Monroe the opportunity to cash a paycheck solely because she is an African-American woman. Ms. Monroe's

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

race was the motivating factor why Wells Fargo discriminated against Ms. Monroe. By virtue of Wells Fargo's actions and inactions as set forth above, Wells Fargo has violated §1981.

36. Wells Fargo's conduct in discriminating against Ms. Monroe due to her race was intentional. Wells Fargo engaged in a discriminatory practice with malice or with reckless indifference to the federally protected rights of Ms. Monroe.

37. As a direct and proximate result of Wells Fargo's actions, Ms. Monroe has suffered personal humiliation, loss of capacity for the enjoyment of life, mental anguish, and embarrassment justifying an award including compensatory damages and punitive damages according to proof against Wells Fargo.

38. As a result of the deprivations of rights at the hands of Wells Fargo, Ms. Monroe has retained Rodal Law, P.A., and has agreed to pay them a reasonable fee, which she is entitled to recover pursuant to 42 U.S.C. 1988(b) and otherwise by law.

**WHEREFORE**, Plaintiff, SATARA N. MONROE, demands judgment against Wells Fargo, N.A. for damages as set forth above, attorney's fees and costs pursuant to 42 U.S.C. 1988(b) and for such further relief as this Court deems just and equitable.

## COUNT II
### Intentional Infliction of Emotional Distress

39. Ms. Monroe repeats, realleges and incorporates paragraphs 1 through 30.

40. Wells Fargo's employees engaged in extreme and outrageous conduct by refusing to allow Ms. Monroe to cash her check due to her race and color. Wells Fargo's employees continued extreme and outrageous conduct by not cashing the check even after the account holder personally appeared at the bank.

41. Wells Fargo's actions intentionally, or in the alternative, recklessly caused Ms. Monroe severe emotional distress. Wells Fargo's actions were malicious.

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

7 | P a g e

**WHEREFORE**, Plaintiff, SATARA N. MONROE, demands judgment against Wells Fargo, N.A. for damages as set forth above and for such further relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff, SATARA N. MONROE, hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ Yechezkel Rodal
Yechezkel Rodal, Esq.
Florida Bar No.: 91210
E-mail: Chezky@Rodallaw.com
Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219
Ft. Lauderdale, Florida 33309
Telephone: (954) 367-5308
Facsimile: (954) 900-1208

*Counsel for Ms. Monroe*

7 | P a g e
**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com